CITY OF BUFFALO v. CHADEAYNE.

(*Superior Court of Buffalo, General Term.*   November 19, 1889.)

CONSTITUTIONAL LAW—DUE PROCESS OF LAW—REVOCATION OF BUILDING PERMIT.
    Where a city council has granted a permit to build frame buildings within the fire limits, and excavations for the cellars have been made, and materials contracted for, and partly delivered, and the work of building is in progress, a resolution of the council, rescinding its former action, without notice to defendant or opportunity given him to be heard, is, in the absence of any public necessity for such action, void, as taking property without due process of law.

Appeal from trial term.
Argued before TITUS and HATCH, JJ.
*Frank C. Laughlin,* for respondent.    *Giles E. Stilwell,* for appellant.

HATCH, J.    In 1887 the common council of Buffalo granted to defendant a permit to erect seven frame houses within the fire limits of the city.    Under this permit the defendant made excavations for the cellars, and contracted for the materials entering into said structures.    A portion of the materials so contracted for were delivered, the walls were partially or wholly laid in some of the cellars, some of the timbers were framed and partly up, and defendant was actively prosecuting the work of building, when, without notice to defendant or opportunity given him for being heard, said council rescinded its former action granting the permit, and defendant was notified to desist from the erection of his buildings.    Upon a failure to comply with such notice defendant was arrested upon a civil warrant to answer for a violation of the city ordinances.    A trial was had, and judgment passed against defend-

ant for a penalty of $100. Appeal was taken to the trial term, where, by direction of the court, the judgment was affirmed, when an appeal was taken to this court. It is conceded that defendant could not lawfully erect his buildings where they were without a permit from the plaintiff so to do. It needs no argument to show that defendant had acquired by virtue of the permit valuable property rights and assumed contract obligations. Under the plainest principles of justice, then, he became entitled to protection therein. Such right to protection has become the fundamental law of the land, which may not be overridden by arbitrary legislation. In *City of Detroit* v. *Plank-Road Co.*, 43 Mich. 140, 5 N. W. Rep. 275, Judge COOLEY says: "It cannot be necessary at this day to enter upon a discussion in denial of the right of the government to take from either individuals or corporations any property which they may rightfully have acquired. In the most arbitrary times such an act was recognized as pure tyranny, and it has been forbidden in England ever since *Magna Charta*, and in this country always. It is immaterial in what way the property was lawfully acquired, whether by labor in the ordinary avocations of life, by gift or descent, or by making a profitable use of a franchise granted by the state; it is enough that it has become private property, and it is then protected by the 'law of the land.'" While it is undoubtedly the rule that all rights of property are held subject to reasonable regulation and control, in its manner of keeping and use, and while the legislature may, under the police power, pass or repeal laws regulating such control, as the public welfare may from time to time require, yet its powers in this respect must be exercised with a due regard to the rights of the individual as guarantied by the constitution, and the legislation must have reference to the safety, comfort, and welfare of the public. Dwar. St. 458. Courts will interfere to protect the individual when it appears that property rights have been invaded, under the guise of the police power, and it is apparent that such is not the object and purpose of the regulation: *In re Jacobs*, 98 N. Y. 98. The evidence here fails to show, in any aspect, that the contemplated structures were in any sense a nuisance, or that any public necessity existed to arrest the completion of the work begun. *Dainese* v. *Cooke*, 91 U. S. 580. While it is true that courts are ordinarily bound to assume that good reasons exist for the action of a municipal body, vested with discretion to legislate with respect to the public welfare, yet it is limited to such acts as are necessary for public protection; and, when it appears that such is not its real object and purpose, then courts are not only bound, but it is their duty, to interfere.

It is urged that the action of the council does not take private property, but simply limits its use, and that, therefore, it is not in violation of the constitutional prohibition against taking private property without just compensation or due process of law. The contract which defendant has entered into is for furnishing materials for the erection of seven houses. It has been, at least, partially fulfilled by the delivery of the materials, and the frame-work of the structures is partially completed. If he is now compelled to abandon the structures, the materials are rendered valueless for the purpose intended. He is stripped of his right to use them, and it may not be assumed that he could use them for any other purpose. Instead, therefore, of its being a limitation of the right to use, it is an absolute prohibition of their use, and therefore a destruction for that purpose. It was said by Judge ANDREWS in *People* v. *Otis*, 90 N. Y. 52: "Depriving an owner of property of one of its essential attributes is depriving him of his property within the constitutional provision." This property being purchased for a specific purpose, when its use is prohibited for that purpose, and he is unable to use it, the distinction between limitation of use and destruction or deprivation is not apparent. *Wynehamer* v. *People*, 13 N. Y. 398; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 177. The right to make the erections increased the value of defendant's land, and when this right was taken away, not only was there a destruction of all that had been

done, but the property itself was diminished in value. The law will not stop to measure the extent of the deprivation, if it be substantial. We do not deem it necessary at this time to determine whether the second resolution is repugnant to defendant's constitutional right that compensation must be made for private property taken for the benefit of the public good. It leads us, however, to the discussion of another principle, upon which we choose to rest our decision. It is the guaranty of both the federal and state constitution that property shall not be taken for the public good without "due process of law." It is this clause which furnishes protection against arbitrary legislation. Judge EARL in *Stuart* v. *Palmer*, 74 N. Y. 183, says: "Due process of law is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial or administrative or executive in its nature." Judge Cooley says, in his work on Constitutional Limitations, (page 355:) "'Due process of law,' is not confined to ordinary judicial proceedings, but extends to all cases when property is sought to be taken or interfered with." Cited with approval in *Stuart* v. *Palmer*, *supra*, 191. It is not overlooked that an exception exists to this rule, in the exercise of the police power in a case of actual necessity, like the spread of a fire, the ravages of an epidemic, or the advance of a hostile army, when all private property becomes subservient to the public welfare, and is subordinate to that higher law, which is above constitutions, resides in the principle of self-preservation, and finds expression in the phrase, "necessity knows no law." But in no aspect of this case is there room to invoke this power. In *Stuart* v. *Palmer*, *supra*, at page 191, Judge EARL further says: "It may, however, be stated generally that due process of law requires an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing or an opportunity to be heard is absolutely essential. We cannot conceive of due process of law without this." This language is cited with approval in *Re Railroad Co.*, 112 N. Y. 75, 19 N. E. Rep. 664, and *People* v. *O'Brien*, 111 N. Y. 62, 18 N. E. Rep. 692. In the case last cited the common council granted right to a corporation to lay tracks of a surface street railroad in Broadway, New York. The company accepted the grant, and laid its tracks. Subsequently the legislature passed an act dissolving the corporation, and assumed the right to take therefrom all its franchises and property, and bestow them upon the state. The court held the law to be in violation of the constitution, in that it assumed to take property without due process of law, and impaired the obligation of contracts. We think the principle applicable here. Defendant had acquired under his permit valuable property rights, and was obligated by contracts entered into upon the faith of the grant conferred. There existed no grave public exigency which called for summary action. Under such circumstances his rights and property could not be taken from him or destroyed without due process of law. This required that notice should have been given, and an opportunity provided for his being heard. This it is not pretended was done, and consequently the resolution rescinding the permit was void. As the judgment pronounced rested upon this resolution, it follows that there remains no basis to support a recovery, in any view of the case. The judgment is therefore reversed, with costs.