## ILLEGAL ERECTION AND MAINTENANCE OF SCALES IN A PUBLIC STREET.

Common Pleas Court of Logan County.

B. FRANK MINNICH ET AL v. SARAH C. LUTZ ET AL.*

Decided, February 21, 1916.

*Municipal Corporations—Without Power to Authorize the Placing of Wagon Scales in a Public Street for Private Benefit—Scales Placed in the Street Create a Nuisance, When.*

1. A municipal council is without authority to grant the right to place wagon scales in a public street for the benefit of an abutting owner or any private interest.

2. Where scales so placed in the street obstruct the gutter and cause surface water to collect and become stagnant, foul and to give rise to offensive odors, and interfere with ingress and egress of abutting property owners, teams drawing loads to be weighed and using the untraveled part of the street increases the amount of mud in wet weather and dust in dry weather, of litter and refuse which accumulates in the street, a nuisance is created against which injunction lies.

HOVER, J.

B. Frank Minnich and Myrtle Minnich, on the 9th day of July, 1915, filed their petition against Sarah C. Lutz and W. P. Lutz, claiming in substance that on the 12th day of July, 1915, the plaintiffs bought a certain part of a lot known as Lot No. 35 in the village of Lake View, Ohio, from Alex Miller; that in front of said lot stands a wagon scale in the street, and that plaintiffs purchased from said Miller all his right, title and interest in said wagon scales; that on or about the 16th day of July, 1915, defendants wilfully and maliciously and without any right on their part, and with no permission from plaintiffs, did tear away part of said scales, being the north cement wall, thereby allowing the pit under the scales to become filled with wash and rubbish so that the scales will have to be torn up and

*Affirmed by the Court of Appeals of the Third District, June 29, 1916, except that all costs should be paid by the plaintiff.

rebuilt, all to the damage of plaintiffs in the sum of one hundred and fifty dollars.

W. P. Lutz files his separate answer and says in substance that he denies that he wilfully and maliciously, and without any right, tore away part of said scales or otherwise mutilated or destroyed them; that he together with his family occupy for their residence a house and lot adjoining plaintiffs' on the north, and that defendants' family reside within twenty feet of the gutter running north and south in front of their said dwelling; that on or about the 3d day of May, 1912, the village council of Lake View passed an ordinance authorizing the construction and maintenance of said scales on said street, providing no interference with the use of street resulted; that when said scales were put in, a cement wall for the pit was so constructed that it extended across the gutter in front of plaintiffs' premises and obstructed the flow of the water and blocked the gutter, causing a pool of water to stand and remain, becoming stagnant and foul in front of his said dwelling; that on or about the 16th day of July, 1915, to permit the stagnant water and filth to drain off, he drilled a hole in said cement wall and not doing any unnecessary damage, thereby permitting the stagnant water and filth to be drained off through the gutter; that on the 24th day of June, 1915, by action of the town council of the village of Lake View, said cement wall was declared a nuisance; that by reason of said scales being constructed across the gutter of the street said village ordinance permitting the location and maintenance of the scales was violated in that it interfered with the free use of the street; that the village council has no authority to permit the streets to be obstructed by erecting wagon scales therein for private use, and that said ordinance is void and illegal.

Sarah C. Lutz, by leave of the court, has filed her separate answer, wherein she denies the allegations of the plaintiffs' petition, after admitting that plaintiffs are the owners of the real estate described in the petition and the wagon scales and that plaintiffs acquired some right to said scales by virtue of an agreement with R. M. Meredith, a former owner; that she is the owner of the lot adjacent to the lot of plaintiffs as described

in the petition, wherein she with her husband and family dwell, and after describing the conditions caused by the scales obstructing the flow of the water in the gutter, alleges that said scales are a nuisance, and prays for a decree of the court that said scales and wall are a nuisance and that by mandatory order the nuisance be abated.

Plaintiffs file a reply to the answer of W. P. Lutz and after denying the allegations contained in the second and third defenses, that the scales and walls are a nuisance, aver that the village council required defendants to construct a curb and gutter, which they refused to do; that these plaintiffs have offered and now renew the same, to put in a drop on the north side of said wall in the line of the gutter and thereby take care of the surface water that would otherwise gather in front of defendants' premises; that an escape for the water under the scales has been provided, which effectually disposes of the water gathered under said scales. Wherefore, plaintiffs renew their prayer for judgment.

By agreement, a jury was waived and the case was submitted to the court on the evidence.

The evidence shows that the village council, on the 3d day of May, 1912, passed an ordinance authorizing Alex Miller and his assigns to construct and place a wagon scale on South Main street of Lake View, Logan county, Ohio, as follows:

"Section 1.   That Alex Miller is hereby given the right to construct and maintain a pair of wagon scales on South Main street in Lake View, Logan county, Ohio, in front of in-lot No. 35 in said village of Lake View, Ohio, for a period of ten years; said scale to be constructed along the curb line of said street in front of said premises in such a manner as not to interfere with the full use of said street by the public.

"Section 2.   When the use of said scales are discontinued, they must be removed from the street and the same be put in good repair.

"Section 3.   This ordinance shall be in full force and effect from and after its passage, approval and due course of law."

Plaintiffs bring this action for damages and for restraining order.   The defendants answer and attack the authority of the village council to grant such a privilege as this in the first in-

stance, claiming the right by virtue of the ordinance to locate the scales in the street is null and void; that the scales are a nuisance, and pray for the abatement of the same.

Section 3714, General Code, provides:

"Municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts, within the corporation and shall cause them to be kept open, in repair, and free from nuisance."

"Streets and highways belong to the state and are under its control; but the state has seen fit to place the streets of a municipality under the control of the municipal authorities thereof, as agents of the state, in preserving the public rights in such streets; and the municipal corporation holds the fee, subject to the right of the state to direct the method wherein such trust shall be administered and subject to the duty of keeping the streets in repair and free from nuisance." *Reynolds* v. *Cleveland,* 20 C.C.(N.S.), 139, affirmed by Supreme Court, 76 O. S., 619, without report.

The municipal authorities are agents of the state. As such it is the duty of the municipality to preserve the public right in the streets. The streets and highways belong to the state.

"A municipality has the right to determine the width of its streets which shall be devoted to lawful public uses, devoting a part to sidewalk, a part to lawn and shade trees, a part to necessary poles for public lighting, etc., a part to drainage, gutters, etc., and a part to vehicles and street cars; and it is not an unlawful use if that part of a street which is usually devoted to drainage be occupied in part by poles supporting street lights." *Norwalk* v. *Jacobs,* 9 O. C.C.(N.S.), 153.

The right of municipal authorities to grant the use of streets to water, gas, and electric light companies, transportation, telegraph and telephone companies, and for many other public service corporations, is well settled and need not be discussed here.

"Public streets, squares, landings, and grounds are held in trust for the public, and being so held they are for the use for

which they were dedicated or acquired and subject to the property rights of the abutting owners, under the absolute control of the legislative power of the state." *R. R.* v. *Cin.*, 76 O. S., 481.

The case of *Branahan* v. *Hotel Company,* 39 O. S., 333, was a case where the city of Cincinnati by ordinance authorized the use of Central avenue to Fourth street as a hack stand. Complaint was made that the hacks prevented full enjoyment of the use of abutting property owners. The court in the opinion say:

"The city is clothed with power over the streets, and is charged with the duty of keeping them open for public use and free from nuisance. It may enlarge these general public uses without infringing the rights of the adjacent owner, but where additional burdens are imposed, even for a public purpose, which materially impair the incidental property right of the lot owner, equity will enjoin, until compensation is made.

"This ordinance granted a permanent use of the street for mere private uses.

"As well might the city authorities authorize permanent booths or structures for the use of dealers in the various articles of trade. Having no rent to pay, the occupants could accommodate the public at better prices.

"The supervision and control of the public highways of a city is a public trust, and while additional uses may be imposed not subversive of or impairing the original use, such as laying down gas and water mains, yet the right of the public to use it as a street, and of the adjacent lot owner to enjoy it as the means of access to his property, can not be materially impaired.

"The city has the right to regulate hackney coaches and also the right to appropriate private property for the use of the corporation, but it has no power to appropriate the easement of an adjacent lot owner to a mere private use."

The grants of a city or village to use the streets are limited to the authority granted the city or village as the agent of the state by the Legislature.

"Every grant in derogation of the right of the public in the free and unobstructed use of the streets, or restrictive of the control of the proper agencies of the municipal body over them, or of their legitimate exercise of their powers in the public interest, will be construed strictly against the grantee, and liberally

in favor of the public, and never extended beyond its express terms when indispensible to give effect to the grant.'' *Railroad* v. *Defiance,* 52 O. S., 262.

There is not a reported case in Ohio where the grant of a municipal council to erect and maintain scales in the street has been upheld; nor has the court been able to find a reported case in our state where such grant for a similar or equivalent purpose has been upheld. The exercise of this power has been limited to public service, and to abutting property owners in a very limited way, such as space for displaying goods, taking in coal, extending steps from buildings, and such minor rights limited to close proximity to the abutting property line.

Neither is there a case cited by counsel in their briefs on either side of this controversy where the question of the right to locate and maintain wagon scales in the street has been passed upon, and the court has not found an Ohio case on this point. However, there can be no question that such right can not be granted and maintained when the grant interferes with the complete power and control of the municipal authorities, or when such right interferes with the use of the street by the public or the enjoyment of the property of an abutting property owner.

We are not without authority on this subject, to a certain extent, in other states and it may be said in this connection that not one case on this subject has been found in any state where the grant of the privilege to erect and maintain private scales in the public highway has been sustained by the courts, while it has been held that a city can not authorize the construction of scales in a street for the benefit of a private individual. *City of Tell City* v. *Bidefield,* 20 Ind. App., 1; *Berry Horn Coal Co.* v. *Scruggs-McClure Co.,* 62 Mo. App., 93; *State* v. *Stroud* (Tenn. case), 52 S. W. R., 697.

If one man has the right to use the street as a place of business, all men have the same right. This could not be granted. The state would lose control of the highways and the rights of abutting property owners would be set at naught. The granting by municipalities of such private rights in public property is against public policy.

Leaving the question of the right of the village council to grant such a privilege for the present and taking up the question of nuisance:

Defendants claim that by reason of the cement wall for the scale pit on the north side extending across the gutter line, the water is stopped and caused to collect to the depth of fourteen or more inches, carrying with it filth from the street; that it becomes stagnant and foul, causing a stench endangering the health of himself and family and preventing the full enjoyment of his property.

The evidence proves substantially this condition. The evidence shows that the village council was of the same belief as defendants, when on the 24th day of June, 1915, the record of the council proceedings shows that this pair of scales in the street was declared a nuisance. This record does not make the scales a nuisance, but is evidence tending to prove that the presence of the scales as then located was not considered beneficial to the public interests. The record shows that this action was taken by the council on the petition of W. P. Lutz, S. C. Lutz, Andy Wright, Prior Cummons, W. A. Stroby and Lawrence Sanders.

It is claimed that the plaintiff is willing to put in a drop on the north side of the wall at his own expense, permitting the water to flow under the scales and thereby make its escape.

This statement of plaintiff is not received with so much weight and credibility as the court would be pleased to give it under other circumstances. Plaintiff was informed of the unpleasant and objectionable features of the scales before he purchased the lot including the scales, and was also informed that he would have legal trouble if he acquired the title to the scales and left them there.

Notwithstanding, he purchased the scales in the face of the fact that the town council had passed a resolution condemning them, and of which fact he was informed, but this is not all. In the summer, on or about the — day of July, 1915, defendant, W. P. Lutz, took his ax and knocked out a triangular piece of cement wall about eighteen inches deep and let the stagnant, filthy water flow away. Plaintiff applied for and procured an in-

junction against defendant, restraining him, from interfering
with the scales or in repairing them. Had plaintiff in good faith
wanted a drop in the gutter, then would have been a good time
to put in, but instead of so doing, he rebuilt the wall tight and
strong, so that the previous annoying conditions would neces-
sarily continue to exist.

Without going into a lengthy discussion of nuisance, public
and private, the finding of the court is that the scales are in the
street without authority and that the village council is without
authority to grant the privilege or right to erect scales for the
benefit or private interests in the public highway; that the
scales interfere with the proper use of the highway in that they
prevent proper drainage of the water therefrom, to the annoy-
ance, discomfort and hindrance to the public in its right to full
and unobstructed use and enjoyment of the highway; that the
presence of the scales in front of the residence of defendants,
with the necessary unpleasant conditions caused thereby, will
continue unless abated, is apparent.

The presence of the teams standing on the side of the street
out of the traveled path of the road, cutting the ground into
mud when soft, and beating it into dust when dry, to say nothing
of the condition of the gutter caused thereby, when driving on
and off of the scales to weigh loads, and the damming up of
the water in the gutter, preventing ingress and egress, creates
a condition repulsive to contemplate.

"A nuisance may be: first, private, as when one so uses his
property as to damage another or disturb his quiet enjoyment of
it; or, second, public or common, where the whole community
is annoyed or inconvenienced by offensive acts, as when one ob-
structs a highway or carries on a trade that fills the air with
noxious and offensive fumes." *Cardington* v. *Fredericks*, 46 O.
S., 446.

By authority of this decision, the scales are both a public
and private nuisance, as the law as expressed in the opinion of
that case is that: "The general accepted rule is, that although
the nuisance be a public one, yet it is private also, if an individual
sustain injury thereby, and he may maintain an action and re-

cover his special damage, whether it be direct or only consequential.''

The court does not approve nor find sufficient authority for the use of the ax in abating an actual or fancied nuisance, but there are some mitigating circumstances that should be considered. The undisputed testimony is that defendant, W. P. Lutz, sought the advice of the board of health, some village authorities and county authorities, all of whom advised him to make a hole in the wall and let the water drain away. He was probably willing to act on this advice, for the reason that it was free and for the additional reason that the summary action afforded prompt relief.

The finding of the court is that the scales complained of are a public and private nuisance and it is ordered that the nuisance be abated within thirty days by removing the scales from the street or highway, and that there be a hole made in the north wall deep enough and large enough to drain all the water from the gutter within five days from this date; that the street be left in a smooth, safe and finished condition.

The petition of plaintiffs is dismissed and judgment against W. P. Lutz for five dollars costs; judgment against plaintiffs for the balance of the costs.