Douglas D. Depew Neodesha City Attorney 620 Main Street, P.O. Box 313 Neodesha, Kansas 66757
Dear Mr. Depew:
You request our opinion concerning whether a city may prohibit the business of pawnbrokers. You indicate that K.S.A. 16-706 et seq. regulate pawnbrokers by requiring, among other things, that a person obtain a license from the city or county clerk depending upon where the business is located.[1] This statutory scheme also addresses qualifications for a license, examination of records, the requirement of a written contract and permissible interest charges.
You believe that K.S.A. 16-706 et seq. are nonuniform by virtue of K.S.A. 16-707 which distinguishes between cities of the first and second classes and cities of the third class in terms of where a person obtains a license. Consequently, you inquire whether the city may charter out of K.S.A. 16-706 et seq. and completely ban the business of pawnbrokers.
While a city may use its home rule power to charter out of nonuniform statutes, any charter ordinance that would exempt the city from K.S.A. 16-706 et seq. and ban the business of pawnbrokers would have to be in accordance with both the federal and state constitutions.
Clearly, Kansas municipalities may regulate pawnbrokers.[2]
Whether an ordinance prohibiting pawnbrokers would pass muster under the Due Process Clause of the 14th Amendment to the federal constitution has not been addressed by the Kansas appellate courts.
In Gilbert v. Mathews,[3] the Kansas Supreme Court struck a statute the provisions of which were so oppressive and unreasonable that the Court concluded that the statute's effect would be to prohibit the lawful business of auctioneering.
 "While there are no Kansas cases specifically on point, it is universally recognized that the business of an auctioneer and of selling merchandise at auction is a legitimate business which cannot be prohibited directly or indirectly. However, the right to sell at auction is not absolute but may be withheld unless there is compliance with reasonable regulations. The business is affected with a public interest and is subject to reasonable legislative restriction and regulation to prevent abuses and frauds. Requirements for the licensing of auctioneers and auctions as well as other regulations which are reasonable and not wholly arbitrary have long been upheld. The right to regulate and license the business does not, however, include the right to prohibit it directly or, in effect, to adopt unreasonable and unfair regulations, or such regulations as would be oppressive or highly injurious to the business. (Emphasis added.)
In 1969, the Kansas Supreme Court concluded that an ordinance prohibiting huckstering and peddling on city streets was arbitrary, unreasonable and void.[4]
After the Gilbert case was decided in 1960, the United States Supreme Court, in Ferguson v. Skrupa,[5] upheld a Kansas statute that prohibited the business of debt adjustment and in doing so, rejected the doctrine that had allowed the Court in the past to hold laws unconstitutional when it believed that the legislature had acted unwisely.
 "Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation. There was a time when the Due Process Clause was used by this Court to strike down laws which were thought unreasonable, that is, unwise or incompatible with some particular economic or social philosophy. [The] doctrine that prevailed in Lochner . . . that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely-has long since been discarded. We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws.
 "Unquestionably, there are arguments showing that the business of debt adjusting has social utility, but such arguments are properly addressed to the legislature, not to us. We refuse to sit as a `superlegislature to weigh the wisdom of legislation.'"
In 1973, the Kansas Supreme Court followed the holding in Fergusonv. Skrupa and upheld the Buyer Protection Act against the claim that it violated the defendant's right to engage in business.[6]
 "The right and duty of the state to protect its citizens from injurious business activities by regulation under the police power can hardly be questioned. Both state and federal cases hold that even a legitimate occupation may be restricted or prohibited in the public interest and persons may be restrained from certain contracts adversely affecting that interest."
In 1978, the Kansas Supreme Court announced that its standard of review in Due Process cases would comport with the Ferguson
decision and, consequently, the Court would no longer sit as a " superlegislature" and "throw out" laws that it might feel were "unwise, improvident or inappropriate."[7]
The most recent case where this scope of judicial review was applied is Blue v. McBride[8] where the Court upheld legislation that eliminated the autobrokering business. Finding the district court's reliance on the Gilbert case "misplaced," the Court set forth its standard of review for statutes that address economic regulation and that are challenged on 14th Amendment Due Process grounds:
1. "Courts do not substitute their social and economic beliefs for the judgment of legislative bodies and are not concerned with the wisdom, need, or appropriateness of legislation."
2. "An economic regulation challenged on substantive due process grounds will not be overturned as long as there is an evil at hand for correction and it might be thought that the particular legislative measure was a rational way to correct it."
3. "The due process clause does not prohibit states from anticipating and addressing problems which have yet to manifest themselves as long as the problem is at least rationally conceivable."
Applying this standard, the Court reviewed the extensive legislative history and concluded that the Legislature had determined that an evil had to be corrected or one might arise if remedial action was not taken. Finally, the Court found that the plaintiffs had not satisfied their burden of proof that there was no evil for correction and that the legislative measure was not a rational way to correct it.
While the cases that have reached the Kansas Supreme Court have dealt with the constitutionality of statutes, we have no reason to believe that the standard of review would be different for a municipality that enacted an ordinance that prohibited pawnbrokers.
Consequently, it is our opinion that if an ordinance prohibiting pawnbrokers is challenged on 14th Amendment Due Process grounds, the Kansas Appellate Courts will apply the standard of review in the Blue v. McBride case. How the Courts would apply the standard to the facts is beyond the purview of this opinion, as those facts are not available for our consideration.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] K.S.A. 16-707.
[2] City of Wichita v. Wolkow, 110 Kan. 127 (1921); City ofCoffeyville v. Vakas, 137 Kan. 797 (1933).
[3] 186 Kan. 672 (1960).
[4] Delight Wholesale Co. v. City of Overland Park, Kansas,203 Kan. 99 (1969).
[5] 372 U.S. 726, 10 L.Ed.2d 93, 83 S.Ct. 1028 (1963).
[6] State, ex rel. Sanborn v. Koscot Interplantary, Inc.,212 Kan. 668 (1973).
[7] State, ex rel. Schneider v. Liggett, 223 Kan. 610 (1978) (upholding legislation that required physicians to obtain medical malpractice insurance).
[8] 252 Kan. 852 (1993).